**2016 UT App 239**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
VICTORIA ELIZABETH FANTON,
Appellant.

Memorandum Decision
No. 20150300-CA
Filed December 8, 2016

Fifth District Court, Cedar City Department
The Honorable Keith C. Barnes
No. 141500783

Matthew D. Carling, Attorney for Appellant

Sean D. Reyes, Laura B. Dupaix, and Thomas B.
Brunker, Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES KATE A. TOOMEY and DAVID N. MORTENSEN
concurred.

ROTH, Judge:

¶1      Victoria Elizabeth Fanton was convicted of second degree
felony robbery and third degree felony possession of a
controlled substance. She appeals the district court's imposition
of a jail term as a condition of her probation. We affirm.

¶2      On December 26, 2014, Fanton and two friends robbed a
Cedar City gas station at knife-point. After absconding with
nearly $200, their truck broke down. Fanton and her two friends
were located on December 27 and taken into custody. When
Fanton was booked into the Iron County Jail, the police found
syringes, a plastic pipe "used to smoke heroin," and a "black

scale" in her purse. Fanton admitted she used the scale "to weigh certain drug product."

¶3     Fanton was charged in two separate cases—one addressing the robbery-related charges and the other addressing the drug-related charges. She ultimately pled guilty to robbery and possession or use of a controlled substance. The district court ordered a presentence investigation report (PSI) from Adult Probation and Parole (AP&P), which was completed and submitted prior to the sentencing hearing.

¶4     In the PSI, AP&P recommended that the court sentence Fanton to the statutory prison terms for each conviction and assess substantial fines. However, AP&P further recommended that the prison sentences be stayed and that Fanton be placed on thirty-six months of supervised probation, which would include certain conditions. Among the conditions was a requirement that Fanton "[s]erve 270 days in the Iron County Jail with credit for time served." The PSI also included substantial information about Fanton's background, including her criminal history, employment and educational history, financial situation, accommodations, and family/marital status. It noted concerns associated with several of these categories, including Fanton's mental health. In particular, the PSI indicated that Fanton suffered from mental health issues and that she had in the past received treatment for them.

¶5     At the sentencing hearing, the State informed the court that it found "the recommendations made by AP&P [to be] appropriate." Fanton's counsel stated that Fanton "ha[d] no major qualms with anything contained [in the PSI]," except that she requested "that she be given credit for the time she has served [in jail]." Fanton's counsel acknowledged that Fanton would be required to serve "an additional amount of jail time," but requested that she be allowed to serve it in "three or four day weekend blocks" so that she could take care of her children and also more effectively resolve "a few other cases [against her]

in Washington County." Counsel also informed the court that Fanton "ultimately . . . want[ed] to compact to the State of Michigan" to serve her jail time, because she "has family ties and essentially is from there." The State objected, stating that the weekend blocks would be "such a hassle for the Court" and that due to "the seriousness" of her crimes, "straight time should be done."

¶6      After hearing from both parties, the court stated that it "certainly agree[d] with the State . . . [about] the seriousness of this charge" and that the 270-day jail recommendation seemed to be "on the light side." Nonetheless, the court accepted AP&P's recommendations, suspending the statutory prison sentences for each offense and placing Fanton on supervised probation for thirty-six months, with several conditions. The condition at the heart of this appeal was that Fanton serve 270 days in jail, with credit for time served. The court stated that it was "not inclined" to allow Fanton to serve her jail sentence solely on weekends. It also informed her that there would be "zero tolerance for any violations of the terms of [her] probation."

¶7      Fanton appealed, challenging the district court's decision to require her to serve a 270-day jail sentence and, in the alternative, the court's rejection of her request that she be allowed to serve the time on weekends. Fanton completed her jail term on August 5, 2015, two months before the opening brief in this appeal was filed. Within a month of her release, AP&P filed an affidavit with the district court alleging that Fanton had violated her probation. After finding her in violation, the court revoked Fanton's probation and required her to serve the suspended prison sentences. Fanton has not appealed the court's decision to revoke her probation and impose the original prison sentences.

¶8      Fanton challenges the court's imposition of jail time as a condition of her original probation. Specifically, Fanton argues on appeal that her trial counsel provided ineffective assistance

by failing to request a mental health assessment based upon the PSI's information about her mental illness or, alternatively, that the district court committed plain error by not ordering a mental health assessment sua sponte.[1] She claims that based on the mental health information in the PSI, Utah Code section 77-18-1.1(2) required that she undergo a mental health screening and assessment.[2] She also argues that, had either her counsel or the court requested or ordered the mental health assessment, it was "quite possible that the results of the assessment would have found [her] eligible for release into either drug or mental health

---

1. Fanton raises two other issues in her opening brief. First, she argues that the district court abused its discretion when it denied her request to serve her remaining jail time in three-to-four-day blocks on weekends. However, in her reply brief, she concedes that this issue is "likely moot given that her trial counsel did not re-raise the issue at her probation revocation hearing" and "no appeal was taken from her revocation determination." Second, she argues that her trial counsel was ineffective for failing to request that she be transferred to Michigan to serve her sentence there so that her family, who apparently resided in Michigan, could help with her children. Fanton has withdrawn the second issue based upon information she obtained after her opening brief had been filed indicating that Michigan did not participate in programs involving interstate transfer of inmates. Accordingly, we do not address the merits of either argument.

2. Although we do not reach the merits of Fanton's argument on mootness grounds, *see infra* ¶¶ 9–16, we note that section 77-18-1.1(2) of the Utah Code does not appear to apply to mental health issues. Rather, it mandates screening and appropriate follow-up for substance abuse issues. *See* Utah Code Ann. § 77-18-1.1 (LexisNexis 2012); *id.* § 41-6a-501(1)(a) (LexisNexis 2014) (providing the definition of "assessment" for purposes of section 77-18-1.1).

treatment or community based supervision" as alternatives to jail. In response, the State argues that Fanton's challenge to the jail condition of her probation is moot. It contends that this court "cannot grant [Fanton] any relief" because she has completed her jail sentence. We agree with the State.

¶9     Mootness is a jurisdictional issue. *Utah Transit Auth. v. Local 382 of Amalgamated Transit Union*, 2012 UT 75, ¶¶ 19–20, 27, 289 P.3d 582. Our supreme court has stated that the mootness doctrine is "an element of the principles defining the scope of the 'judicial power,' vested in the courts by the Utah Constitution," and "is not a simple matter of judicial convenience or [an] ascetic act of discretion," because "courts are not a forum for hearing academic contentions or rendering advisory opinions" when there is not a "controversy directly involving rights." *Id.* ¶¶ 18, 19, 27 (citations and internal quotation marks omitted). In the "absence of a justiciable controversy . . . the court can go no further, and its immediate duty is to dismiss the action." *Id.* ¶ 19 (citation and internal quotation marks omitted); *see also State v. Hooker*, 2013 UT App 91, ¶ 3, 300 P.3d 1292 (explaining that a moot appeal "must be dismissed . . . unless it can be shown to fit within a recognized exception to the mootness principle" (omission in original) (citation and internal quotation marks omitted)).

¶10    An issue is moot if the requested relief—in this case, relief from the jail component of Fanton's probation—has been rendered "impossible or of no legal effect" due to changed circumstances or intervening events that have effectively eliminated the controversy. *State v. Peterson*, 2012 UT App 363, ¶¶ 4–5, 293 P.3d 1103 (citation and internal quotation marks omitted); *see also Local 382*, 2012 UT 75, ¶ 19 (explaining that "[t]he defining feature of a moot controversy is the lack of capacity for the court to order a remedy that will have a meaningful impact on the practical positions of the parties"); *State v. Sims*, 881 P.2d 840, 841 (Utah 1994) ("An issue on appeal

is considered moot when the requested judicial relief cannot affect the rights of the litigants." (citation and internal quotation marks omitted)).

¶11    We are not persuaded that it is possible to grant Fanton the relief she requests or that, assuming we could, it would affect her rights. Essentially, Fanton requests relief from the jail condition of her probation on the basis of mental health issues that she contends were inadequately considered at sentencing. She argues that, had she received a proper mental health evaluation, she probably would not have been required to serve time in jail. But even if there is a reasonable likelihood that the judge would not have imposed a jail term as a condition of her probation had he been provided with an in-depth mental health assessment, the fact remains that Fanton is challenging a condition of her probation that she has already completed. No relief we could grant can undo Fanton's period of incarceration on probation.

¶12    Further, Fanton has not shown that her jail sentence gave rise to the sort of long-term effects that would bring her situation within the collateral consequences exception to the mootness doctrine. *See Hooker*, 2013 UT App 91, ¶ 3 (explaining that this court will reach the merits of a moot appeal only if a recognized exception to the mootness doctrine, such as collateral legal consequences, applies). While Fanton raises the collateral consequences exception, she does so only briefly, in one sentence, simply contending that the State "has failed to show that there is no possibility that any collateral legal consequences can be imposed on the basis of the challenged sentence." However, we have consistently held that we will not presume the existence of collateral legal consequences in criminal cases unless the appellant is challenging the validity of her underlying conviction. *See, e.g.*, *Duran v. Morris*, 635 P.2d 43, 45–46 (Utah 1981); *State v. Legg*, 2016 UT App 168, ¶¶ 17–25, 380 P.3d 360, *petition for cert. filed*, Sept. 30, 2016 (No. 20160810); *State v. Moore*,

2009 UT App 128, ¶¶ 9–17, 210 P.3d 967; *cf. Sibron v. New York*, 392 U.S. 40, 58 (1968) (explaining that a defendant "has a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him" (citation and internal quotation marks omitted)). Here, Fanton is challenging only her jail sentence, not the validity of her criminal convictions. As a result, she bears the burden to demonstrate that she will suffer collateral legal consequences as a result of her jail sentence. *See Legg*, 2016 UT App 168, ¶ 18 (noting that in cases where we will not presume that collateral legal consequences exist, the "party seeking to survive dismissal bears the burden" to demonstrate the applicability of the exception). She has not done so. Accordingly, we conclude that the collateral consequences exception does not apply here.

¶13 Finally, Fanton contends that, because she remains incarcerated under the original sentences, her challenge remains "viable." She argues that she is "serving prison sentences based upon the lack of mental health assessment in the PSI for sentencing." But Fanton is not serving prison sentences because she did not have a mental health assessment in connection with her original sentencing. Her current incarceration, while certainly flowing from the original judgment, which sentenced her to suspended prison terms, is the result of choices and legal determinations made apart from, and subsequent to, the imposition and completion of her jail time. Fanton served her jail sentence successfully, as ordered. Shortly afterward, however, she violated other terms of her probation. It was that violation that led the court to revoke her probation and execute her original suspended prison terms.

¶14 And the contention Fanton seems to make on appeal—that she is now in prison because she did not receive the treatment or tools she needed for success in the first instance—is a matter that might have been appropriately raised in the probation revocation proceedings as a reason for the court to

forbear from executing the original prison sentences in favor of further probation and treatment. But that matter is not an appropriate subject for this appeal. We cannot reach potential errors in the district court's decision to revoke Fanton's probation and execute her prison sentences through a challenge to the conditions of probation imposed in the original sentencing proceeding. The court's subsequent decision to revoke her probation was based on considerations pertinent to the circumstances at that later time and thus was independent of those in play during the original proceeding. Indeed, the posture of this appeal makes it impossible for us to know what the court did and did not consider in the revocation proceeding. On this record, the connection between the lack of a mental health assessment and the events that led to the revocation of her probation is no more than a matter of speculation.

¶15    More significantly, we cannot remedy the district court's decision to revoke Fanton's probation by tracing back, even if that were possible here, the sort of indeterminate effects that might have flowed from any failure to request or have a mental health assessment completed in connection with the original sentencing. At the time of the district court's ultimate decision to revoke her probation, the effects of any alleged error involving Fanton's mental health on the district court's determination of her original probation terms had run their course and cannot be undone by any decision we might make here. *See State v. Peterson*, 2012 UT App 363, ¶ 4, 293 P.3d 1103 (discussing how an issue becomes moot). And "[w]here the issues that were before the [district] court no longer exist, the appellate court will not review the case." *Id.* (first alteration in original) (citation and internal quotation marks omitted).

¶16    Accordingly, we conclude that Fanton's appeal is moot, and we dismiss it for lack of jurisdiction.

───────────